# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BETTY J. POTEET-HAYES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-350-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Betty J. Poteet-Hayes requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born May 22, 1961, and was fifty-three years old at the time of the administrative hearing (Tr. 40, 253). She completed eleventh grade, and has no past relevant work (Tr. 31, 321). The claimant alleges inability to work since December 15, 2009, due to back problems, right arm problems, right leg problems, and depression (Tr. 320).

### Procedural History

On April 17, 2012, the claimant applied for disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 10, 2012.[3] The applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 7, 2015 (Tr. 21-33). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

---

[3] The claimant previously applied for supplemental security income benefits under Title XVI on August 22, 2007. The application was denied, and Osly F. Deramus writing for Glenn A. Neel determined that the claimant was not disabled on December 15, 2009. The Appeals Council denied review, and this Court affirmed the denial of benefits in Case No. CIV-10-402-RAW-KEW.

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit each for six hours in an eight-hour workday. However, he imposed the additional limitations of being limited to simple, routine, repetitive tasks; simple work-related decisions; cannot perform at a production rate pace (*e. g.*, assembly line work) but can perform goal-oriented work (*e. g.*, office cleaner); can relate to co-workers, supervisors, and the general public on a superficial basis; and can adapt to a work situation (Tr. 26). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because she could perform the requirements of representative occupations such as motel housekeeper, conveyor line bakery worker, and inspector packer (Tr. 32).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the medical and nonmedical source evidence, (ii) failing to properly conduct determinations at steps four and five, (iii) failing to properly assess her credibility, and (iv) essentially reopening her prior claim for benefits. The claimant also asserts that evidence submitted to the Appeals Council should be considered. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative joint disease of the cervical spine, chronic low back pain, obesity, depression severe with

psychotic features, and posttraumatic stress disorder (PTSD) (Tr. 24).  The relevant medical evidence demonstrates that in 2006 the claimant was in a motor vehicle accident and suffered subluxations in her spine, resulting in a diagnosis of lumbar strain (Tr. 476, 588).  On September 26, 2006, she was able to return to work, but was given a restriction of no lifting over fifty pounds (Tr. 589).

A 2008 mental status examination resulted in an Axis I diagnosis of Dysthymic disorder, rule out Asperger's syndrome (Tr. 509).  Dr. Patrick Turnock recommended that the claimant continue treatment for depression and be referred to a psychotherapist who could work with her on issues of grief and bereavement, as well as addressing social skills (Tr. 509).

In November 2008, the claimant was screened for treatment at Mental Health and Substance Abuse Centers of Southern Oklahoma, and assessed with major depressive disorder, recurrent, severe with psychotic features (Tr. 516).  This diagnosis has remained consistent over the years (Tr., *e. g.*, 945, 1205, 1393).   Mental health treatment records often reflect the claimant was doing well, and that she was alert and oriented (Tr., *e. g.*, 857).  She reported suicidal thoughts in 2009 when she found out her boyfriend had a mistress (Tr. 917).  Additionally, the mental health treatment records indicate "very poor judgment" to the extent that her children had to take over management and ownership of her home and some personal property because a con artist had almost gotten her to sell her home and give him the money on two different occasions (Tr. 946-954).  She was fairly isolated and lonely following the loss of her husband in 2004, and notes reflect that he had not allowed her to work outside the home while they were married (Tr. 954).

Notes from 2010 reflect no progress in the claimant's depression and continued concerns over her being taken advantage of by a scam artist (Tr. 985).

On September 1, 2012, the claimant was in a second motor vehicle accident in which she was severely bruised on her left shoulder and developed a hematoma and tachycardia, as well as acute mental changes with anxiety, depression, and seizures (Tr. 1075, 1160). She was also diagnosed with cervical and thoracic strain, as well as lumbosacral strain (Tr. 1220).

Mental health treatment records from November 1, 2012 indicate that the claimant had made "marginal progress" on her depression, continued to struggle with impulse control, and her family members continued to hold the deed to her property to keep her from selling it to a scam artist (Tr. 1217). She continued to be "highly reclusive and isolative" (Tr. 1218). On February 4, 2013, James A. Simmons, LPC, completed a mental status form in which he indicated that the claimant was alert and oriented but that she had some cognitive distortions and disorganized thinking with short term memory problems, and that she "derails often" (Tr. 1311). Further, he noted that she was unable to function in large groups of people and that her executive reasoning was impaired with flat and blunted mood and affect (Tr. 1311). He noted she was highly isolative and had no interests nor activities beyond rare visits from grandchildren (Tr. 1311). Furthermore, he indicated that she had very poor memory, and could do simple tasks if prompted but any complex instructions were totally overwhelming and exacerbated her symptoms. Finally, he stated that she was unable to handle work pressure, responded poorly to directives of supervisors, and was highly judgmental/paranoid of all co-workers and those

she came in contact with (Tr. 1311).  Dr. Alycea Merideth also submitted a "Medical Assessment of Ability to do Work-Related Activities (Mental)," in which it was indicated that the claimant either had a complete or substantial loss of ability to complete work activities (Tr. 1334-1337).  Furthermore, Dr. Merideth indicated that the claimant would be absent from work more than four days per month (Tr. 1337).

On November 30, 2012, Dr. William Cooper conducted a physical examination of the claimant (Tr. 1225).  He assessed the claimant with chronic low back pain; chronic right shoulder and right leg pain, probably osteoarthritis; depression; and chest pain (Tr. 1228).

Dr. Shalom Palacio-Hollmon, Pys.D., conducted a mental status examination of the claimant on December 8, 2012 (Tr. 1235).  He estimated her intelligence to be in the low range, but that her IQ was over 80 (Tr. 1236).  He assessed her with major depressive disorder, severe with psychotic features, as well as PTSD (Tr. 1237).  In summary, Dr. Palacio-Hollmon stated that the claimant appeared to be apprehensive during the evaluation, and that she appeared overwhelmed (consistent with her anxiety and depressed mood) (Tr. 1235-1236, 1238).  He also noted that she continued to experience problematic symptoms even after therapy and pharmacological intervention, and might benefit from evaluation to consider additional or alternative medication (Tr. 1238).  He concluded that the claimant's ability to deal with the public, supervisors, and co-workers was adversely affected by her anxiety, sad mood, and PTSD.  He noted that she was able to understand, remember, and carry out simple verbal instructions but required repetition and redirection for lengthy, complex instructions (Tr. 1238).  As such, he stated that she

was likely unable to meet the demands of a work environment and would likely require high levels of structure, supervision, and support to do so (Tr. 1238).

Mental health treatment records from 2013 indicate that the claimant's problems had gotten a little worse and that the frequency of her depression and anxiety was more intense, along with her ability to cope with stressors (Tr. 1353). Continued concerns regarding the claimant's poor judgment were noted, and she continued to be very isolated (Tr. 1353-1360). On March 8, 2013, the claimant reported feeling depressed the previous two months, but that she was watching her grandson two days a week (Tr. 1362). In November 2014, she continued to report struggling to maintain her emotions every day and increased anxiety (Tr. 1393, 1395). In February 2015, the claimant was feeling depressed and irritable following a lowering of a medication dosage, but noted that she was doing better getting out into crowds and going places, and had been married three months (Tr. 1406).

State reviewing physicians indicated that the claimant could perform light work with no manipulative, postural, visual, communicative, or environmental limitations (Tr. 134-135 167-168). State reviewing physicians also completed Mental RFC assessments and concluded that the claimant could perform simple work-related tasks with supportive supervision, relate to peers and supervisors in superficial work situations, relate to the general public, and adapt to a work environment (Tr. 136-137, 169, 1294).

The claimant asserts that the ALJ erred in formulating her RFC, and the undersigned Magistrate Judge agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical

and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288,

290 (10th Cir. 1995). In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. Noting the previous decision denying the claimant benefits, the ALJ summarized the evidence dating back to 2006 and concluded that there was little evidence to support a finding that the claimant's condition had worsened since the previous denial of benefits (Tr. 27-28). He noted that her next hospitalization was in 2012, following a second motor vehicle accident, which did require follow-up treatment and physical therapy (Tr. 28). He summarized Dr. Cooper's consultative exam findings, as well. He then concluded that "she has not required significant or ongoing medical treatment for her alleg[ed] disabling degenerative disc disease" (Tr. 29). As to her mental impairments, he noted she had never required inpatient hospitalization, that consistent treatment records reflected a "very positive" response to medication management, and that mental status examinations were often normal (Tr. 29). One of the "unremarkable" exam cited by the ALJ was actually Mr. Simmons's mental status form in which he indicated that she could, *inter alia*, "do simple tasks if prompted . . . but any complex instructions are totally overwhelming and exacerbate symptoms" (Tr. 30, 1311). He contrasted her reports of trouble concentrating and going out in public with statements that she had taken care of banking business, been to Wal-Mart, and gone thrift shopping prior to the administrative hearing (Tr. 30). As to Dr. Palacio-Hollmon's opinion, the ALJ assigned it "little probative weight" and stated it

was "overly speculative and vague regarding the opinion of requiring *supportive supervision*," and was inconsistent with the exam findings (Tr. 30). He also assigned no probative value to Dr. Merideth's Mental Assessment, concluding without supporting evidence that it was "an accommodation to the claimant" and stating that it was not supported by objective evidence (Tr. 30). He then gave weight to the opinions of the state reviewing physicians, including their statements regarding *supportive supervision* (Tr. 31). Furthermore, the ALJ concluded that the claimant was not credible (Tr. 31).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians, and the ALJ erred in failing to conduct the requisite analysis with regard to the treating physician opinions in the record, as well as consultative, and reviewing physician opinions in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record and instead imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her mental limitations, particularly related to the claimant's need for supportive supervision, need for redirection, and problems being around other people.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**